HERGET, Judge.
This is a suit for workmen’s compensation benefits filed by James and Bessie Owens on August 14, 1959.
An exception of no cause or right of action was sustained as to the claim of James Owens and no appeal having been taken by him from such judgment, he is not a party to any proceeding now before this Court. The case is on appeal by the Defendant following a denial of an application for rehearing from a judgment rendered by the Trial Court on the merits in favor of Mrs. Bessie Owens for workmen’s compensation at the rate of $35 per week from January 8, 1959 for a period not to exceed 400 weeks. Plaintiff answered the appeal requesting penalties and attorney’s fees.
Mrs. Owens was employed by the Defendant, a corporation doing business in Tangipahoa Parish known as Arkansas Frozen Foods, Incorporated, in the capacity of assisting in the preparation and packaging of frozen foods, among which are sweet potatoes. She was working as a trimmer whose duties consisted of inspecting and removing with a paring knife any spots or defects the mechanical peeling process did not remove from the potatoes. She stood or sat near a conveyor belt on which the potatoes were discharged from the peeler and as the potatoes passed her station adjacent to the conveyor she performed her duties. Concededly the operation was one which comes within the purview of the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq.
For her cause of action against Defendant, Plaintiff asserts in her petition *78 that on January 8, 1959, while in the course of her employment of processing and frying potatoes and in the vicinity of the French fry potato pot containing hot grease she injured herself severely when she slipped on grease that had popped out on the floor.
The Plaintiff, who is now 61 years of age and who at the date of her alleged injury was 60, is now, according to the medical evidence offered on the trial of this case, totally disabled either because of a protruding lumbar disc or an aggravation of an arthritic condition from'the performance of even the light type of work she was engaged in while working for Defendant. The sole issue for resolution therefore is whether or not Plaintiff’s disability can be attributed to an injury she sustained while in the course of her employment with Defendant.
The only evidence of any injury sustained by Plaintiff while in the employ of Defendant is that on January 9, 1959, Plaintiff, while on her way to get a drink of water, accidentally slipped. When asked what portions of her body, touched the floor, she answered, her elbow, she was not sure whether left or right elbow, and her right knee. (Test, page 16) It is this incident which she now maintains resulted in her disability.
The testimony in relation to the accident of January 9, 1959 and the injury sustained by Plaintiff because of such accident is filled with inconsistencies.
 Firstly, according to a report which was made by Mr. Robert Adkins, who was then plant superintendent of Defendant Company, he was standing within three or four feet of Plaintiff when she slipped on January 9, 1959 and assisted her to her feet. At that time upon being asked by Mr. Adkins whether or not she was hurt, she replied that she was not and did not want to see a doctor because she was not hurt and she immediately returned to her work without complaining she was hurt in any way. This report was offered in connection with the testimony of Mr. Adkins and on objection of counsel for Plaintiff was disallowed. However, inasmuch as the witness, Mr. Adkins, identified same as having been made by him at the time of the occurrence complained of and placed in the company’s ■files, we are of the opinion that his report is admissible evidence.
Secondly, despite the dismissal by her of the incident as trivial at the time, she testified on the trial of the case that the fall caused her intense pain in her back; that she suffered continuously up to the date of her termination of employment with the Company on February 11, 1959 and the suffering was so severe she used aspirin and Stanback which she personally purchased to relieve the pain. Further, she offered the testimony of some of her relatives, one being a coemployee, to the effect that on the night of January 9, 1959 following her slipping she suffered severe pain in her leg, so much so she had difficulty getting into the truck which was used to convey her to and from work and she also had to resort to propping her legs on a Coca Cola case while performing her duties as trimmer subsequent to the alleged accident. Despite her testimony as to the pain she was suffering following the fall on January 9, 1959, she at no time made any complaint whatever to her employer as to such pain and did not miss a single day from work from the date of the alleged injury to the termination of her employment with the company on February 11, 1959 when she, along with the other seasonal employees of Defendant, was relieved of her employment with Defendant. In this period she missed only one day from work and that was not because of any alleged pain or suffering but was for the purpose of accompanying her daughter-in-law, who was sick, to the hospital.
Again, she testified that because of such pain and suffering she daily purchased Stanback to relieve the pain and suffering, which seems highly improbable in view *79 of the fact the Plaintiff was shown to be in impecunious circumstances and it seems most unusual she would have expended out of her own funds the cost of drugs to alleviate the pain which she attributed to the alleged fall. Especially is this questionable upon consideration of her testimony that she knew the employer made available such drugs without charge.
Grave doubt is further cast upon the question of whether the accident of January 9, 1959 could have in any way resulted in Plaintiff’s present disability because it seems incredulous to us that Plaintiff could have been suffering the pain which she allegedly related to her friends and relatives and yet fail to consult a doctor. According to the testimony she did not consult a doctor following her alleged injury of January 9, 1959 until March 21, 1959 when Doctor Daley, who testified as a witness in the case, made a house call. He did not at that time take a written history of the complaints Plaintiff related to him, but he expressed the view that Plaintiff’s complaint at that time of her back hurting was of pain she had only for a few days duration and she did not give him any history of any fall on January 9, 1959 while employed by Defendant. Subsequently, in April, Doctor Daley placed the Plaintiff in the St. Tammany Parish Hospital and she did not then give him any history of any fall at the Arkansas Frozen Foods Company, Incorporated. Doctor Daley attributed his first knowledge of any complaint of Plaintiff of any fall at the Defendant’s place of business to have been given to him in July of 1959. Therefore, it is very difficult to comprehend why, if Plaintiff was suffering the pain that she complained of immediately following the alleged fall of January. 9, 1959, she did not make known to her own physician such fact.
On October 22, 1959 the Defendant had Plaintiff examined by Doctor Thames, who was called by the Defendant as a witness. In the history which Plaintiff gave to him at that time he related: “ * * * This lady stated that she had slipped down while at work on January 9, 1959 and her right leg was thrown backwards beneath her also bruising her right elbow. She stated she was not in too much pain and continued to work and worked until February 4, 1959, when she was laid off due to the fact that the plant was closed down where she worked.” (Test, page 60) Further, in the history given by the Plaintiff to Doctor Thames, she denied any previous back injury.
Again, a serious inconsistency is evident inasmuch as in her testimony on the trial of the case Plaintiff said she was able to work following the accident only by suppressing with drugs the severe pain she had immediately following the fall, while in the history she gave Doctor Thames it is to be noted she stated “ * * * she was not in too much pain and continued to work and worked until February 4, 1959, when she was laid off due to the fact that the plant was closed down where she worked.” Actually she worked until February 11 when her employment was terminated, as hereinbefore stated because of seasonal work.
From his examination of Plaintiff and taking into consideration the history related by Plaintiff to him to the effect the .fall on January 9 precipitated the pain— from which she eventually maintains she is totally disabled' — Doctor Thames was of the opinion she sustained an aggravation of an arthritic condition. However, he further testified his opinion that Plaintiff’s disability was connected with the accident of January 9, 1959 was based on consideration of the fact she said the pain in her back began when she fell on January 9, 1959 and on her further statement that she had had no previous back injury.
Furthermore, though she denied on the witness stand she had ever had any difficulty with her back and any back pains and though her lay witnesses testified to the same effect, the Defendant offered as D-2 the records of the New Orleans Char *80 ity Hospital on this patient which showed the Plaintiff had, on many occasions, been a patient in said hospital and there were numerous entries in the history given by her of complaints of back pains and low backache. In addition, it is to be noted the entry made while she was a patient in the Charity Hospital in May and June of 19S9 she complained of a twisting injury three or four days prior to the beginning of the back pain from which she was then complaining. Thus, this • history relates back and would correspond roughly with the history given Doctor Daley on March 21, 1959 when Doctor Daley testified he treated her for a back pain of a few days duration.
We emphasize, we do find it most incongruous that one who sustained a fall while in the scope of his employment and who suffered pain and discomfort sufficient to require medication to relieve the pain during some several weeks of employment could continue to work in constant pain and yet' fail to make known to the employer the alleged cause of the pain, an injury sustained in a fall such as Plaintiff avers occurred to her on January 9, 1959 while in the performance of her employment and which allegedly she related to friends and relatives of her suffering therefrom but never to the management of the Defendant Company and even upon her employment being terminated on February 11, 1959 she failed to make known to her employer any discomfort she had endured resulting from the fall. Likewise, if Plaintiff did suffer pain following the alleged fall on January 9, 1959 and continuously thereafter which she so delayed divulging to anyone except to friends and relatives, it is most difficult to understand why upon seeing Doctor Daley on March 21, 1959 she did not at that time relate such fact to Doctor Daley, her physician.
Even though the cottrts have been liberal in the construction and interpretation of the Woidonen’s Compensation Act, it is necessary for one bringing suit to prove one’s case by a preponderance of evidence and the Court is not justified in awarding judgment on mere possibility or speculation.
In view of the inconsistencies in the testimony of Plaintiff we are not persuaded that the accident allegedly sustained by her on January 9, 1959 was in any way connected with her present disability. It appears more likely and probable that the fall she sustained on January 9, 1959 was of a trivial nature as so described by her at that time, and now she belatedly attempts to attribute her present disability to such incident. We are prone to believe that in actuality when Plaintiff was apprised some time in July, 1959 of the fact her back was in such a condition that she would be unable to perform laborious work any longer, she, at that time, concluded to attempt to attribute her disability to the long forgotten incident of January 9, 1959.
For these reasons, the judgment of the Trial Court is reversed.
Judgment reversed.